# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **KYLEE STOCKING,** | ) |
| Plaintiff, | ) |
| v. | ) |
| **EQUIFAX INFORMATION SERVICES, L.C.C.,** | ) JURY TRIAL DEMANDED |
| **EXPERIAN INFORMATION SOLUTIONS, INC.,** | ) |
| and | ) |
| **MAZUMA CREDIT UNION** | ) |
| Defendants. | ) |

## COMPLAINT

COMES NOW the Plaintiff, KYLEE STOCKING ("Plaintiff"), and for her Complaint against the Defendants EXPERIAN INFORMATION SOLUTIONS, INC., ("Experian"), EQUIFAX INFORMATION SERVICES, L.L.C., ("Equifax"), and MAZUMA CREDIT UNION, ("Mazuma"), Plaintiff alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action for actual, statutory and punitive damages, and costs and attorney's fees brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*.

1

("FCRA"), which relates to the proper dissemination and use of consumer credit and other financial information.

## JURISDICTION & VENUE

2.     The jurisdiction of this Court is conferred by 15 U.S.C. § 1681 and 28 U.S.C. § 1331.

3.     Venue in this District is proper in that Plaintiff resides here, Defendants transacts business here and the conduct complained of occurred here.

## PARTIES

4.     Plaintiff Kylee Stocking is a natural person that resides in the State of Missouri. She is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

5.     Mazuma is a corporation that regularly transacts business in Missouri.

6.     Mazuma is a furnisher of information as contemplated by FCRA § 1681s-2(a) & (b), that regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies.

7.     Equifax is a corporation, registered to do business in Missouri as a foreign corporation that regularly engages in business in the same.

8.     Equifax is a nationwide credit reporting agency whose principle purpose is the composition and issuance of consumer reports. Equifax is a consumer reporting agency for the purposes of 15 U.S.C. § 1681 et seq.

9.     Experian is a corporation, registered to do business in Missouri as a foreign corporation that regularly engages in business in the same.

10. Experian is a nationwide credit reporting agency whose principle purpose is the composition and issuance of consumer reports. Experian is a consumer reporting agency for the purposes of 15 U.S.C. § 1681 et seq.

## FACTS COMMON TO ALL CLAIMS

11. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

12. On or about August of 2014, Plaintiff purchased a Pontiac Torrent. To make this purchase possible, Plaintiff took out a loan of $13,228.00 (Account # 0000227944**** referred to hereafter as "Account") with Mazuma Credit Union, to whom she would make monthly payments of $262.40.

13. With this car, Plaintiff also signed up for automobile insurance coverage with Farm Bureau Town & Country Insurance Company of Missouri ("Farm Bureau") along with further gap coverage with MetLife Auto and Home Insurance ("MetLife").

14. On or about January 1, 2017, Plaintiff got into an accident in which her car was "totaled."

15. At the time of the accident, Plaintiff still owed around $10,242.02

16. Shortly after the accident, Plaintiff submitted a claim to Farm Bureau.

17. On or about Mid-January, both Farm Bureau and MetLife sent checks of $3,644.00 and $10,131.99 respectfully to Mazuma Credit Union. Both of these checks were deposited towards Plaintiff's then active balance on January 18, 2017, leaving Plaintiff with a surplus.

18. Following the deposit of these checks, a rep from Mazuma reached out to Plaintiff to inform her that both checks had been submitted resulting in an overpayment on the Account.

19. The rep told Plaintiff that this overpayment amount could go to a new car purchase or create a new checking account with Mazuma.

20. Upon hearing this, Plaintiff told the Mazuma rep that she wanted the surplus insurance money for another vehicle.

21. The Mazuma rep instructed her to come to their local branch and that they'd close the account and give her the check.

22. Plaintiff then proceeded to collect the surplus check and thought the situation was over.

23. To Plaintiff's surprise, Mazuma saw fit to initiate a collection suit on the Account due to an alleged deficiency balance.

24. Fortunately, Plaintiff was able to present evidence that the insurance checks had paid the alleged deficiency balance on the Account. Therefore, Mazuma dismissed the collection suit.

25. Despite the favorable result, Plaintiff underwent extensive stress and anxiety over having to defend herself *pro se* in this collection suit.

26. Moreover, Plaintiff had to take several days off work to defend herself in the collection suit. Plaintiff was never compensated for these days off.

27. Around this time, Plaintiff sought to improve her creditworthiness. On or about August 31, 2017, she obtained a copy of her credit report.

28. To Plaintiff's dismay, she found that Mazuma was reporting to the three credit reporting agencies ("CRAs"), Equifax, Experian, and TransUnion, that the Account was still open with a deficiency balance of $10,134.00.

29. On or about September 1, 2017, Plaintiff sent letters to the three CRAs to dispute the accuracy of the reporting of the Account.

30. Pursuant to 15 U.S.C. 1681i of the FCRA, the Equifax, TransUnion, and Experian were then obligated to investigate this derogatory account for accuracy.

31. As a part of Equifax, TransUnion, and Experian's investigations for the September 1, 2017 dispute and pursuant to 15. U.S.C. 1681i(a)(2) of the FCRA, Equifax, TransUnion, and Experian forwarded copies of Plaintiff's September 1, 2017 letter to Mazuma, the furnisher.

32. Pursuant to 15 U.S.C. 1681s-2(b) of the FCRA, Mazuma was then obligated to reinvestigate the disputed information on Plaintiff's report for accuracy and modify or delete the information if the disputed information was determined to be incomplete or inaccurate.

33. Plaintiff did not receive a letter from any of the CRAs in response to her September 1, 2017 letter.

34. When Plaintiff saw her credit report as of October 6, 2017, she was disappointed to see that Mazuma and the CRAs made no changes regarding the Account.

35. On or about October 19, 2017, Plaintiff sent letters to the three CRAs to dispute the accuracy of the reporting of the Account.

5

36. Pursuant to 15 U.S.C. 1681i of the FCRA, the Equifax, TransUnion, and Experian were then obligated to investigate this derogatory account for accuracy.

37. As a part of Equifax, TransUnion, and Experian's investigations for the October 19, 2017 dispute and pursuant to 15. U.S.C. 1681i(a)(2) of the FCRA, Equifax, TransUnion, and Experian forwarded copies of Plaintiff's October 19, 2017 letter to Mazuma, the furnisher.

38. Pursuant to 15 U.S.C. 1681s-2(b) of the FCRA, Mazuma was then obligated to reinvestigate the disputed information on Plaintiff's report for accuracy and modify or delete the information if the disputed information was determined to be incomplete or inaccurate.

39. Plaintiff did not receive a letter from any of the CRAs in response to her October 19, 2017 letter.

40. Without any responses sent by the CRAs, the Plaintiff was forced to check her credit report to see if any changes regarding the reporting of the Account were made.

41. On or about December 4, 2017, Plaintiff checked her credit report.

42. Once again, Plaintiff was disappointed that not only had Mazuma and the CRAs failed to correct the false and derogatory reporting on the Account, but that they had now changed the account status of the Account from "open" to "derogatory." The Account was now listed as "charged off."

43. On or about December 14, 2017, Plaintiff sent letters to the three CRAs to dispute the accuracy of the reporting of the Account.

44. Pursuant to 15 U.S.C. 1681i of the FCRA, the Equifax, TransUnion, and Experian were then obligated to investigate this derogatory account for accuracy.

45. As a part of Equifax, TransUnion, and Experian's investigations for the December 14, 2017 dispute and pursuant to 15. U.S.C. 1681i(a)(2) of the FCRA, Equifax, TransUnion, and Experian forwarded copies of Plaintiff's December 14, 2017 letter to Mazuma, the furnisher.

46. Pursuant to 15 U.S.C. 1681s-2(b) of the FCRA, Mazuma was then obligated to reinvestigate the disputed information on Plaintiff's report for accuracy and modify or delete the information if the disputed information was determined to be incomplete or inaccurate.

47. Plaintiff did not receive a letter from any of the CRAs in response to her December 14, 2017 letter.

48. Without any responses sent by the CRAs, the Plaintiff was forced to check her credit report to see if any changes regarding the reporting of the Account were made.

49. When Plaintiff saw her credit report as of January 26, 2018, she was disappointed to see that Mazuma and the CRAs made no changes regarding the Account.

50. On or about January 29, 2018, Plaintiff sent letters to the three CRAs to dispute the accuracy of the reporting of the Account.

51. Pursuant to 15 U.S.C. 1681i of the FCRA, the Equifax, TransUnion, and Experian were then obligated to investigate this derogatory account for accuracy.

52. As a part of Equifax, TransUnion, and Experian's investigations for the January 29, 2018 dispute and pursuant to 15. U.S.C. 1681i(a)(2) of the FCRA, Equifax,

7

TransUnion, and Experian forwarded copies of Plaintiff's January 29, 2018 letter to Mazuma, the furnisher.

53. Pursuant to 15 U.S.C. 1681s-2(b) of the FCRA, Mazuma was then obligated to reinvestigate the disputed information on Plaintiff's report for accuracy and modify or delete the information if the disputed information was determined to be incomplete or inaccurate.

54. Plaintiff did not receive a letter from any of the CRAs in response to her January 29, 2018 letter.

55. Without any responses sent by the CRAs, the Plaintiff was forced to check her credit report to see if any changes regarding the reporting of the Account were made.

56. When Plaintiff saw her credit report as of March 7, 2018, the results were bittersweet. While TransUnion ceased all reporting on the Account, Mazuma was still reporting the false and derogatory Account data through Equifax and Experian.

57. On or about March 8, 2018, Plaintiff sent letters to Equifax and Experian to dispute the accuracy of the reporting of the Account.

58. Pursuant to 15 U.S.C. 1681i of the FCRA, the Equifax and Experian were then obligated to investigate this derogatory account for accuracy.

59. As a part of Equifax Experian's investigations for the March 8, 2018 dispute and pursuant to 15. U.S.C. 1681i(a)(2) of the FCRA, Equifax and Experian forwarded copies of Plaintiff's March 8, 2018 letter to Mazuma, the furnisher.

60. Pursuant to 15 U.S.C. 1681s-2(b) of the FCRA, Mazuma was then obligated to reinvestigate the disputed information on Plaintiff's report for accuracy and modify or

8

delete the information if the disputed information was determined to be incomplete or inaccurate.

61. Plaintiff did not receive a letter from either of Equifax or Experian in response to her March 8, 2018 letter.

62. Without any responses sent by Equifax and Experian, Plaintiff was forced to check her credit report to see if any changes regarding the reporting of the Account were made.

63. When Plaintiff saw her credit report as of April 12, 2018, she was disappointed to see that Mazuma, Equifax, and Experian made no changes regarding the Account.

64. On or about April 23, 2018, Plaintiff sent letters to Equifax and Experian to dispute the accuracy of the reporting of the Account.

65. Pursuant to 15 U.S.C. 1681i of the FCRA, the Equifax and Experian were then obligated to investigate this derogatory account for accuracy.

66. As a part of Equifax and Experian's investigations for the April 23, 2018 dispute and pursuant to 15. U.S.C. 1681i(a)(2) of the FCRA, Equifax and Experian forwarded copies of Plaintiff's April 23, 2018 letter to Mazuma, the furnisher.

67. Pursuant to 15 U.S.C. 1681s-2(b) of the FCRA, Mazuma was then obligated to reinvestigate the disputed information on Plaintiff's report for accuracy and modify or delete the information if the disputed information was determined to be incomplete or inaccurate.

68. Plaintiff did not receive a letter from Experian or Equifax in response to her April 23, 2018 letter.

69. Increasingly agitated, Plaintiff once again decided to check her credit report to see if any changes regarding the reporting of the Account were made.

70. When Plaintiff saw her credit report as of May 24, 2018, she saw that neither Mazuma nor Equifax and Experian had made changes to the reporting of the Account.

71. On or about June 19, 2018, Plaintiff decided to once again try to rectify her unfortunate situation. On that date, Plaintiff sent letters to Equifax and Experian to dispute the accuracy of the reporting of the Account.

72. Pursuant to 15 U.S.C. 1681i of the FCRA, the Equifax and Experian were then obligated to investigate this derogatory account for accuracy.

73. As a part of Equifax and Experian's investigations for the June 19, 2018 dispute and pursuant to 15. U.S.C. 1681i(a)(2) of the FCRA, Equifax and Experian forwarded copies of Plaintiff's June 19, 2018 letter to Mazuma, the furnisher.

74. Pursuant to 15 U.S.C. 1681s-2(b) of the FCRA, Mazuma was then obligated to reinvestigate the disputed information on Plaintiff's report for accuracy and modify or delete the information if the disputed information was determined to be incomplete or inaccurate.

75. Plaintiff did not receive a letter from either Equifax or Experian in response to her June 19, 2018 letter.

76. Without any responses sent by the CRAs, the Plaintiff was forced to check her credit report to see if any changes regarding the reporting of the Account were made.

77. On or about July 24, 2018, Plaintiff checked her credit repot and saw that despite her best efforts, Equifax, Experian, Mazuma failed to rectify the false and derogatory reporting of the Account.

78. Plaintiff, fearing that she would be unable to ever get the Account to report accurately on her Experian and Equifax credit report, felt she had no choice but to bring the immediate suit.

## FIRST CLAIM FOR RELIEF
### (Negligent and Willful Violations of 15 US.C. § 1681*i* by Equifax)

79. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

80. The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681*i*(a)(1). The Act imposes a 30-day time limitation for the completing of such an investigation. *Id.*

81. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681*i*(a)(5)(A).

82. If information is deleted from a consumer's file following a dispute, "the information may not be reinserted in the file" unless the CRA certifies that the information is complete and accurate and, even then, the CRA "shall notify the consumer of the

11

reinsertion in writing not later than 5 business days after the reinsertion[.]" *See* 15 U.S.C. § 1681*i*(a)(5)(B).

**Equifax's Reasonable Reinvestigation Violations**

83. By letters dated 9/1/2017, 10/19/2017, 12/14/2017, 1/29/2018, 3/8/2018, 4/23/2018, and 6/19/2018 and sent to Equifax, Plaintiff disputed the inaccurate and derogatory Mazuma Account reporting by Equifax.

84. Upon information and belief of Plaintiff, Equifax conducted an inadequate investigation of the Mazuma Account following each dispute.

85. By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, Equifax willfully and/or negligently violated 15 U.S.C. § 1681*i*(a)(1).

86. As a direct and proximate result of Equifax's disregard for Plaintiff's dispute and its obligations under the FCRA as outlined above, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer such as himself.

87. As a direct and proximate result of Equifax's willful and/or negligent refusal to conduct reasonable investigations as mandated by the FCRA as outlined above, Plaintiff has suffered loss and damage including, but not limited to: financial loss, loss of credit opportunity, a justifiable fear to request credit, expenditure of time and resources, mental anguish, humiliation and embarrassment, entitling them to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681*o*.

88. Equifax's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, retaliation, and willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages, plus attorneys' fees and costs pursuant 15 U.S.C. § 1681*n*.

**WHEREFORE** Plaintiff prays for judgment on this ***First Claim for Relief*** in her favor and against Equifax, and for the following relief:

(a) Actual damages sustained;

(b) Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

(c) Punitive damages in an amount to be determined by the jury;

(d) Reasonable attorneys' fees and costs; and

(e) Any other and/or further relief as deemed appropriate and just by this Honorable Court.

## SECOND CLAIM FOR RELIEF
**(Negligent and Willful Violations of 15 US.C. § 1681*i* by Experian)**

89. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

90. The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681*i*(a)(1). The Act imposes a 30-day time limitation for the completing of such an investigation. *Id.*

91. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681*i*(a)(5)(A).

92. If information is deleted from a consumer's file following a dispute, "the information may not be reinserted in the file" unless the CRA certifies that the information is complete and accurate and, even then, the CRA "shall notify the consumer of the reinsertion in writing not later than 5 business days after the reinsertion[.]" *See* 15 U.S.C. § 1681*i*(a)(5)(B).

### **Experian's Reasonable Reinvestigation Violations**

93. By letters dated 9/1/2017, 10/19/2017, 12/14/2017, 1/29/2018, 3/8/2018, 4/23/2018, and 6/19/2018 and sent to Experian, Plaintiff disputed the inaccurate and derogatory Mazuma Account reporting by Experian.

94. Upon information and belief of Plaintiff, Experian conducted an inadequate investigation of the Mazuma Account following each dispute.

95. By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, Experian willfully and/or negligently violated 15 U.S.C. § 1681*i*(a)(1).

96. As a direct and proximate result of Experian's disregard for Plaintiff's dispute and its obligations under the FCRA as outlined above, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer such as himself.

97. As a direct and proximate result of Experian's willful and/or negligent refusal to conduct reasonable investigations as mandated by the FCRA as outlined above, Plaintiff has suffered loss and damage including, but not limited to: financial loss, loss of credit opportunity, a justifiable fear to request credit, expenditure of time and resources, mental anguish, humiliation and embarrassment, entitling them to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681*o*.

98. Experian's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, retaliation, and willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages, plus attorneys' fees and costs pursuant 15 U.S.C. § 1681*n*.

**WHEREFORE** Plaintiff prays for judgment on this *Second Claim for Relief* in her favor and against Experian's, and for the following relief:

(f) Actual damages sustained;

(g) Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

(h) Punitive damages in an amount to be determined by the jury;

(i) Reasonable attorneys' fees and costs; and

(j) Any other and/or further relief as deemed appropriate and just by this Honorable Court.

## THIRD CLAIM FOR RELIEF

### (Negligent and Willful Violations of 15 U.S.C. § 1681s-2 Against Mazuma)

99. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

100. Mazuma is a "furnisher" as that term is used in 15 U.S.C. § 1681*s-2*.

101. Furnishers of credit information have duties under the FCRA, specifically 15 U.S.C. § 1681*s-2*(b)(1), to investigate disputes initiated from consumers to CRAs as to the accuracy of information reported about them by the furnisher.

102. On at least seven occasions, namely 9/1/2017, 10/19/2017, 12/14/2017, 1/29/2018, 3/8/2018, 4/23/2018, and 6/19/2018, Plaintiff contacted Equifax and Experian specifically to dispute the accuracy of how the Mazuma Account was being reported.

103. Plaintiff specifically advised Equifax and Experian on each occasion that mistakes had been made, and requested the false information be corrected accordingly.

104. Upon information and belief, and pursuant to 15 U.S.C. § 1681*i*(a)(2), Mazuma received notification of these disputes from Equifax and Experian and sent notice to Equifax and Experian verifying the information as accurate.

105. By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, Mazuma negligently and/or willfully violated § 1681*s-2*(b)(1) with respect to each dispute lodged by Plaintiff.

106. As a direct and proximate result of Mazuma willful and/or negligent refusal to comply with the FCRA as described herein, Plaintiff has suffered loss and damage including, but not limited to: financial loss, loss of creditworthiness, loss of credit

16

opportunity, damage to reputation, expenditure of significant time, energy and out-of-pocket costs, considerable distress, mental anguish, worry, frustration, fear and embarrassment, entitling Plaintiff to an award of actual damages as determined by the jury, plus attorneys' fees and the costs of this action, pursuant to 15 U.S.C. § 1681*o*.

107. Mazuma's indifference as to its obligations under the FCRA reveals a conscious disregard of the rights of Plaintiff, and the injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct, calling for an assessment of punitive damages against Mazuma pursuant to 15 U.S.C. § 1681*n*(a)(2).

**WHEREFORE** Plaintiff prays for judgment on this ***Third Claim for Relief*** in her favor and against Mazuma, and for the following relief:

(a) Actual damages sustained;

(b) Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

(c) Punitive damages in an amount to be determined by the jury;

(d) Reasonable attorneys' fees and costs; and

(e) Any other and/or further relief as deemed appropriate and just by this Honorable Court.

## JURY DEMAND

Plaintiff respectfully demands a jury trial on all issues so triable.

Respectfully submitted,

**CREDIT LAW CENTER**

Date: August 3, 2018
/s/*Anthony Hernandez*
Anthony Hernandez # 69129
4041 N.E. Lakewood Way, Ste. 200
Lee's Summit, MO 64064
Tel:   (816) 282-0422
Fax:   (855) 523-6884
anthonyh@creditlawcenter.com

*Attorney for Plaintiff*